YETTA KRITZER, as Administratrix, etc., of MORRIS KRITZER, Deceased, Appellant, *v.* THE CHLORAL CHEMICAL CO., INC., Respondent.

First Department, June 20, 1933.

*Irving L. Rollins* of counsel [*Schafran & Rollins*, attorneys], for the appellant.

*William L. Greenfogel*, for the respondent.

TOWNLEY, J. Plaintiff, as administratrix, brought this action to recover fifty dollars, the amount of one weekly installment allegedly due under a written agreement annexed to the complaint. The money concededly has not been paid and is due provided the agreement is enforcible.

The agreement recites that three natural parties, plaintiff's intestate, one Kaplan and one Feldman, are the sole stockholders and directors of the corporate defendant and are desirous of putting into effect a resolution adopted by them for the purpose of protecting the survivors of any of the natural parties who at the time of their death are financially interested in the defendant corporation. It was then agreed, in consideration of the sum of one dollar and the mutual covenants, that the corporate defendant should pay to the legal heirs or representatives of any one of the natural parties who might die two-thirds of the salary which he might be receiving from the corporate defendant at the time of his death. The parties further agreed that from the time of such demise the corporate defendant would pay two-thirds of the weekly salary to the representatives weekly " until such time as the Chloral Chemical Co., Inc., shall purchase the outstanding stock of the deceased stockholder." The contract then concluded as follows:

" *Third.* The Chloral Chemical Co., Inc., shall have the right to purchase said stock of the deceased natural party hereto at any time it may desire; the sum to be paid therefor shall be the book value of the stock at the time of the purchase, which said valuation shall also take into consideration the good will of the

business to be computed at the rate of $10.00 per carboy sold. It is specifically understood and agreed, however, that should the legal heirs or representatives of the deceased natural party hereto fail or refuse to sell the said stock to the said The Chloral Chemical Co., Inc., then and in that event, the payments to be made by the said The Chloral Chemical Co., Inc., aforesaid shall cease.

"*Fourth.* It is further understood and agreed by and between the parties hereto, that neither or any of the said parties shall sell, transfer, assign, convey or otherwise dispose of the shares of stock owned by them in The Chloral Chemical Co., Inc., or the Certificates of Stock representing the same, unless such shares of stock shall have first been offered to the remaining stockholders at a price to be determined by the value of the assets of the said corporation as the same appears upon the books of the corporation. Such offer shall be made in writing and remain standing for a period of thirty (30) days, within which time the remaining stockholders may accept the same. In the event that such remaining stockholders shall not signify their intention to purchase said stock within such thirty (30) day period, then the said party or parties shall be authorized to otherwise sell and dispose of said stock."

The Appellate Term reversed the order of the Municipal Court on the ground that under the terms of the agreement the representatives of the deceased stockholder were under no obligation to sell the decedent's stock to the corporation and that, therefore, the corporation did not acquire an option to purchase nor did it receive any other consideration for its promise to make weekly payments. We disagree with this interpretation of the contract.

The manifest purpose of the agreement was to keep the stock subject to the control of the survivors of this group of three natural stockholders so long as the stockholders thought it worth while to maintain the stockholdings in *statu quo* by the weekly payments. There was no direct obligation on the defendant's part to buy or on the plaintiff's part to sell, but there was an arrangement to maintain the ownership and control of the stock in the hands of the original group by the weekly payments. The duty to make these payments could be terminated at any time by defendant electing to take the stock. The owners could thereupon determine whether they preferred to sell or to dispose of the stock in some other way. If they chose not to sell, the duty to make the weekly payments terminated. It seems clear to us that, in order to collect the weekly payments, plaintiff was bound to show that she had not sold, transferred, assigned or conveyed or otherwise disposed of the outstanding stock interest. This she did. The promise of retention

of unincumbered ownership was sufficient consideration for the promise to make the payments.

The determination of the Appellate Term should be reversed and the judgment and order of the Municipal Court should be affirmed, with costs in this court and in the Appellate Term.

FINCH, P. J., MARTIN and O'MALLEY, JJ., concur; McAVOY, J., taking no part.

Determination reversed and judgment and order of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.